## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CHRISTIAN BRADLEY, BRANDON DAY, and OSCAR MORENO,<br><br>        Plaintiffs,<br><br>    vs.<br><br>COMMERCIAL FURNITURE SERVICES, LLC, JIM MCMENIMEN, and CRAIG GOOKIN,<br><br>        Defendants. | CIV. ACTION NO._____<br><br>The Honorable _____<br><br>**JURY TRIAL DEMANDED** |

## <u>COMPLAINT FOR DAMAGES</u>

COME NOW Plaintiffs Christian Bradley, Brandon Day, and Oscar Moreno (*collectively*, "Plaintiffs"), by and through the undersigned Counsel of Record, and hereby file this Complaint for Damages against Defendants Commercial Furniture Services, LLC, Jim McMenimen, and Craig Gookin (*collectively*, "Defendants"), respectfully showing the Court as follows:

# I.  JURISDICTION AND VENUE

### 1.

Plaintiffs bring the above-captioned case pursuant to:  (a) 29 U.S.C. §§ 201, *et seq.,* the Fair Labor Standards Act of 1938, as amended, ("FLSA") for unpaid minimum/overtime wages and retaliation; (b) the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981") for race and national origin discrimination; and (c) laws of the State of Georgia for breach of contract.

### 2.

The United States District Court for the Northern District of Georgia ("Court") is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 because the above-captioned complaint involves the laws of the United States and with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State law claims arise from the same nucleus of operative facts as the Federal law claims.

### 3.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants reside and/or maintain a place of business in the Northern District of Georgia, Atlanta Division, and the unlawful conduct forming the basis of the above-captioned complaint occurred in the Northern District of Georgia, Atlanta Division.

## II.  PARTIES

4.

Plaintiff Christian Bradley ("Bradley") is a thirty-three (33) year old African-American male, who is a citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

5.

Plaintiff Brandon Day ("Day") is a thirty-three (33) year old African-American male, who is a citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

6.

Plaintiff Oscar Moreno ("Moreno") is a thirty-six (36) year old Mexican-American male, who is a citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

7.

At all relevant times, Plaintiffs were "employees" of Defendant Commercial Furniture Services, LLC, within the meaning of, among other laws, the FLSA, 29 U.S.C. § 203.

8.

At all relevant times while employed by Defendant Commercial Furniture Services, LLC, Plaintiff were engaged in commerce and/or engaged in the production of goods for commerce.

9.

Defendant Commercial Furniture Services, LLC, ("Commercial Furniture") is a foreign limited liability company providing office furniture installation, asset management, and logistical services affecting inter-state commerce through its facilities in Georgia and Tennessee and subject to the Court's jurisdiction with a principal office located in Knoxville, Tennessee.

10.

Commercial Furniture operates a facility located at 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071 ("Peachtree Corners Location"), where the conduct forming the basis of the above-captioned complaint occurred.

11.

Commercial Furniture is an "employer" with the meaning of, among other laws, the FLSA, 29 U.S.C. § 203, with more than twenty (20) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year while engaging in inter-state commerce.

12.

At all relevant times while Plaintiffs were employed by Defendant Commercial Furniture Services, LLC, said business employed individuals, including, but not limited to, Plaintiffs, who were engaged in commerce, engaged in the production of goods for commerce, and/or handled, sold, and/or otherwise worked on goods or materials that had been moved on or produced for commerce by any person while generating at least $500,000.00 in annual gross sales or revenue.

13.

Commercial Furniture may be served with process through Cynthia Jenkins, Registered Agent, 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071.

14.

Defendant Jim McMenimen ("McMenimen") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

15.

McMenimen is and was, at all relevant times, Commercial Furniture's Owner and Managing Member, involved in the day-to-day operation of Commercial Furniture and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Commercial Furniture.

16.

Defendant Craig Gookin ("Gookin") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

17.

Gookin is and was, at all relevant times, Commercial Furniture's Georgia Field Operations Manager, involved in the day-to-day operation of Commercial Furniture's Peachtree Corners Location, and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Commercial Furniture.

18.

At all relevant times, Gookin and McMenimen supervised Plaintiffs, as well as participated in the unlawful and tortious conduct described herein.

19.

Gookin and McMenimen may be served with process at Commercial Furniture's Peachtree Corners Location located at 6376 Corley Road, Suite A, Peachtree Corners, Georgia 30071.

## III.  FACTUAL ALLEGATIONS

**A.    Factual Allegations Common to All Parties**

20.

Commercial Furniture provides office furniture installation, asset management, and other logistical services related to the onsite creation of workspaces in the Southeast United States from the Peachtree Corners Location.

21.

Commercial Furniture employs several individuals, including, but not limited, Commercial Installers who are responsible for the efficient installation and assembly of office furniture and workspaces at Commercial Furniture's client facilities throughout the region.

22.

When individuals, including, but not limited to, Plaintiffs, commence employment with Commercial Furniture, McMenimen, Gookin, and Commercial Furniture management advise employees that Commercial Furniture only pays straight hours, no time-and-a-half for overtime hours.

23.

During the course of employment with Commercial Furniture, Plaintiffs diligently and professionally performed all duties and assigned tasks.

24.

Commercial Furniture's work schedule varies on a daily basis depending on the needs of Commercial Furniture's clients. In the evenings no earlier than 6:00PM, but often much later into the night, Gookin sends e-mails with the work schedule for the next day. However, because Commercial Furniture provides onsite services to clients, Commercial Furniture employee are often required to work out-of-town with little or no prior notice. When travelling to out-of-town to worksites, Defendants required Commercial Furniture employees to arrive at the Peachtree Corners Location or the specified worksite at approximately 5:00AM the following day—often only hours after receiving e-mail notice of the need to travel.

25.

Although generally scheduled to work eight (8) hours per day Monday through Friday, whenever a project was not completed by the close of business, Defendants required Plaintiffs and other Commercial Installers to continue working until the project was complete. Often, Plaintiffs were required to work late into the evenings which adversely impacted Plaintiffs' personal and family lives. Whenever Commercial Installers complain about being forced to work overtime without compensation in compliance with the FLSA, McMenimen threatens to suspend and/or give "days off." Defendants repeatedly threatened Commercial Installers with reprimands, suspensions, and/or termination whenever they express concerns or complain about unlawful employment practices.

26.

Although the hours worked by Commercial Furniture employees were initially recorded on timesheets, during the course of Plaintiffs' employment, Commercial Furniture began requiring employees to clock-in and clock-out using an electronic system, including an ADP human resources and management system.

27.

Because Commercial Furniture failed and refused to compensate at the FLSA-mandated rate, Plaintiffs and other Commercial Installers complained to Gookin and

other Commercial Furniture employees.  For example, Marcus Arnold ("Arnold"), a former Commercial Furniture Installer, complained to Gookin about Commercial Furniture's failure to compensate at the FLSA-mandated rate.  Although Gookin often responded to Arnold's complaints by stating, "We're working on it," Commercial Furniture never compensated Commercial Furniture Installers, including, but not limited to, Plaintiffs, at the FLSA-mandated rate for hours worked in excess to forty (40) hours in certain workweeks.  Moreover, in response to one of Arnold's complaints about the failure to compensate at the FLSA-mandated rate in or about May 2020, Gookin responded, "If you don't like it, leave."

28.

Similarly, while at the warehouse and at worksites, Plaintiffs discussed the lack of time-and-a-half for hour worked in excess of forty (40) hours in a given workweek with co-workers and colleagues.  Although present during many of these discussions, Gookin and McMenimen never acknowledged or addressed these concerns, complaints, and discussions.  Rather, Defendants continued to compensate Plaintiffs at the regular hourly rate for hours worked in excess of forty (40) hours in given workweeks.

29.

Whenever Plaintiffs and other Commercial Installers complained about scheduling or unpaid wages, Gookin created a tense and stressful workplace environment.  For example, Gookin would shut down, cease communicating with any complaining Commercial Installer, and/or isolate/separate the complaining Commercial Installer for weeks.  Even worse, Gookin would summarily and punitively remove complaining Commercial Installers and other employees from Commercial Furniture's work schedule, resulting in the loss of income.

30.

Commercial Furniture has an account with United Parcel Service ("UPS"), requiring the maintenance of Installers at UPS facilities.  In 2019 while invoicing/billing UPS at the FLSA-mandated rate for hours worked in excess of forty (40) hours during workweeks by the Installers, Warren and Greg, Commercial Furniture failed to compensate the Installers at the FLSA-mandated rate.  After learning of the failure to compensate the Installers at the FLSA-mandated rate, UPS threatened to, among other things, terminate the account before Commercial Furniture agreed to take remedial action, including, but not limited to, back-pay at the FLSA-mandated rate to the Installers.  Angered, Gookin and McMenimen cursed at the Installers for disclosing the unlawful employment practices.

31.

On or about January 17, 2020, Arnold contacted an attorney to discuss legal remedies associated with Defendants' failure to pay FLSA-mandated overtime wages, the extreme/severe stress caused by Defendants' scheduling practices, and Defendants' unlawful and unfair employment practices.  Following communication with legal counsel, Arnold gave legal counsel's contact information co-workers, including, but not limited to, Victor L. Coleman ("Coleman").  Approximately three (3) weeks later, Defendants removed Arnold from the work schedule and, since that time, Defendants have not scheduled Arnold to work as a Commercial Installer.

32.

Experiencing the same issues as Plaintiffs, Arnold, Coleman, and Derick Freeman (another Commercial Installer), commenced an FLSA suit against Defendants, Arnold, *et al.* v. Commercial Furniture Services, LLC, *et al.*, Civ. Action No. 1:20-cv-03252 (N.D. Ga. Aug. 5, 2020) ("Prior Litigation"), which resulted in the Court approving the FLSA settlement agreement.

33.

After engaging an attorney related to the Prior Litigation, Coleman gave legal counsel's contact information to other Commercial Installers, including Hector Topete ("Topete").   Armed with the knowledge of Defendants' unlawful

employment actions, Topete and other Commercial Installers continued to discuss and express concerns related to Defendants' failure and refusal to compensate employees at the FLSA-mandated rate.  In response, Defendants threatened to terminate the employment of Commercial Installers, including Topete, who discussed compensation.  On at least one occasion, Gookin stated, "If you don't like it, go to another company."

34.

During the Prior Litigation in March 2021, Defendants denied Commercial Installers access to the ADP human resources and management system containing earnings and income statements and, thus, Defendants continue to conceal Defendants' known FLSA violations.

**B.    Facts Related to Christian Bradley**

35.

Beginning in or about 2016, Bradley (African-American) began working for Commercial Furniture as a Commercial Installer earning approximately $16.50 per hour.  Unbeknownst to Bradley, Commercial Furniture often paid newly-hired, non-African-American Commercial Installers higher hourly rates.  For example, when Moreno—Mexican-American—began working for Commercial Furniture as a

Commercial Installer in or about July/August 2017, Commercial Furniture paid Moreno $22.00 per hour to $27.50 per hour depending on the assignment.

36.

Although Bradley worked, on average, in excess of 50-60 hours per week, Commercial Furniture refused and/or failed to pay Bradley overtime at the FLSA-mandated rate for hours worked over forty (40) in a given workweek.

37.

Whenever Bradley complained about unpaid wages and other unlawful employment practices, Defendants responded by stating that they would take care of it, but never followed through.

38.

When attempting to change the status of employees from *purported* 1099-contractors to W-2-employees during similar FLSA litigation in or around October 2020, Commercial Furniture terminated Bradley's employment.

39.

While Bradley worked as a Commercial Installer and Driver, Commercial Furniture required (and was aware that) Bradley worked more than forty (40) hours per workweek.

40.

Rather than compensate Bradley at the FLSA-mandated rate for hours worked in excess of forty (40) hours in each workweek, Commercial Furniture compensated Bradley at the regular straight-time rates for hours worked in excess of forty (40) hours in each workweek.

41.

Commercial Furniture's failure to properly compensate Bradley at the FLSA-mandated rate was knowing and willful.

**C.     Facts Related to Brandon Day**

42.

Beginning in or about January 2017, Day (African-American) began working for Commercial Furniture as a Commercial Installer earning approximately $20.00 per hour.  Unbeknownst to Day, Commercial Furniture often paid newly-hired, non-African-American Commercial Installers higher hourly rates.  For example, when Moreno—Mexican-American—began working for Commercial Furniture as a Commercial Installer in or about July/August 2017, Commercial Furniture paid Moreno $22.00 per hour to $27.50 per hour depending on the assignment.

43.

Although Day worked, on average, approximately 50-60 hours per week, Commercial Furniture refused and/or failed to pay Moreno overtime at the FLSA-mandated rate for hours worked over forty (40) in a given workweek.

44.

Faced with ongoing litigation related to violations of the FLSA, in or about January 2020, Commercial Furniture terminated Day's employment and, to escape liability, Commercial Furniture directed Day to create an independent company that Commercial Furniture engaged to provide the same Commercial Installer services Day provided to Commercial Furniture—Defendants, while mislabeling Day, still failed to pay Day at the agreed-upon and/or FLSA-mandated rates.

45.

Whenever Day complained about unpaid wages and other unlawful employment practices, Defendants promised to take care of it, but never followed through.

46.

While Day provided profession Commercial Installer services, Commercial Furniture required (and was aware that) Day worked more than forty (40) hours per workweek.

47.

Rather than compensate Date at the FLSA-mandated rate for hours worked in excess of forty (40) hours in each workweek, Commercial Furniture compensated Day at the regular straight-time rates for hours worked in excess of forty (40) hours in each workweek.

48.

Commercial Furniture's failure to properly compensate Day at the FLSA-mandated rate was knowing and willful.

**D.    Facts Related to Oscar Moreno**

49.

Beginning in or about July/August 2017, Moreno began working for Commercial Furniture as a Commercial Installer earning approximately $22.00 per hour to $27.50 per hour depending on the nature of the assignment.

50.

Although Moreno worked, on average, in excess of 50-60 hours per week, Commercial Furniture refused and/or failed to pay Moreno overtime at the FLSA-

mandated rate for hours worked over forty (40) in a given workweek.  For the $22.00 per hour assignments, Commercial Furniture refused and/or failed to pay Moreno at the FLSA-mandated rate for hours worked for approximately 419 hours.  Likewise, for the $27.50 per hour assignments, Commercial Furniture refused and/or failed to pay Moreno at the FLSA-mandated rate for hours worked for approximately 839 hours.

51.

Additionally, approximately two (2) years ago, Moreno and Commercial Furniture services agreed to work jointly on a project which generated approximately $100,000.00 in revenue.  In exchange for Moreno's professional services on the project, Defendants agreed to pay Moreno fifty percent (50%) of the revenue generated by the project.  Although Moreno provided professional services and worked to complete the project as agreed, Defendants never paid Moreno for the project.  Whenever Moreno requested compensation for the project, Defendants ignored Moreno and/or changed the subject.

52.

Likewise, whenever Moreno complained about unpaid wages and other unlawful employment practices, Defendants responded that they would take care of it, but never followed through.

53.

Faced with substantial unpaid wages and Defendants refusal to pay Moreno pursuant to the parties' agreement and the FLSA-mandated rate, in or about February 2022, Moreno was forced to resign from Commercial Furniture Services, which effectively terminated the employment when refusing to compensate Moreno for professional services.

54.

While Moreno worked as a Commercial Installer, Commercial Furniture required (and was aware that) Moreno worked more than forty (40) hours per workweek.

55.

Rather than compensate Moreno at the FLSA-mandated rate for hours worked in excess of forty (40) hours in each workweek, Commercial Furniture compensated Moreno at the regular straight-time rates for hours worked in excess of forty (40) hours in each workweek.

56.

Commercial Furniture's failure to properly compensate Moreno at the FLSA-mandated rate was knowing and willful.

## IV.  CLAIMS FOR RELIEF

### COUNT I:
### FAILURE TO PAY OVERTIME WAGES
### IN VIOLATION OF THE FLSA
**(All Plaintiffs Against Defendant Commercial Furniture)**

57.

The FLSA requires, with certain exceptions that are inapplicable to the above-captioned case, that employers pay their employees time and a half for hours an employee works in excess of a 40-hour workweek.

58.

During the relevant period, Plaintiffs were employees of Commercial Furniture within the meaning of the FLSA, 29 U.S.C. § 203.

59.

During the relevant period, the relationships between Plaintiffs and Commercial Furniture were employer-employee relationships within the meaning of the FLSA, such that a cause of action exists based upon the failure to pay FLSA-mandated rates for hours worked in excess of forty (40) hours during workweeks.

60.

During the relevant time periods, Plaintiffs regularly worked more than forty (40) hours per workweek and, therefore, Plaintiffs were entitled to be paid one-and one-half times the regular rate of pay for all hours worked over forty (40) hours in the applicable workweeks.

61.

However, during the course of Plaintiffs' employment, Commercial Furniture failed to compensate Plaintiffs for the hours worked in excess of forty (40) hours per workweek.

62.

Commercial Furniture knew, or showed reckless disregard for the fact, that Commercial Furniture failed to pay Plaintiffs overtime compensation in violation of the FLSA.

63.

Commercial Furniture's actions, policies, and/or practices described herein violate the FLSA, 29 U.S.C. § 207, by regularly and repeatedly failing to compensate Plaintiffs at the mandated overtime rate.

64.

Commercial Furniture's conduct in violation of the FLSA was both willful and in bad faith.

65.

As the direct and proximate result of Commercial Furniture's intentional, willful, and unlawful conduct when refusing to pay Plaintiffs overtime compensation for the overtime hours worked, Plaintiffs have suffered loss of income and other damages.

66.

Pursuant to the FLSA, 29 U.S.C. § 216, Plaintiffs are entitled to unpaid overtime wages, liquidated damages, and reasonable attorneys' fees, and costs incurred in connection with this claim.

## COUNT II:
## UNPAID MINIMUM WAGES
## IN VIOLATION OF FLSA
**(Day and Moreno Against Commercial Furniture)**

67.

The FLSA requires employers to pay employees a minimum wage, plus any expenses the employee incurs for the benefit of the employer.

68.

At all relevant times, the relationships between Day, Moreno, and Commercial Furniture were employer-employee relationships within the meaning of the FLSA, such that causes of action exist where Commercial Furniture failed to pay minimum wages during the course of employment.

69.

Beginning in or about January 2017, Day began working for Commercial Furniture as a Commercial Installer earning approximately $20.00 per hour.  To escape liability exposed in certain FLSA litigation, Commercial Furniture directed Day to create an independent company that Commercial Furniture would engage to provide the same Commercial Installer services Day provided to Commercial Furniture.  Although Day's company provided Commercial Installer professional services, Defendants failed to pay Day for certain professional Commercial Installer services provided to Commercial Furniture.

70.

Likewise, beginning in or about July/August 2017, Moreno began working for Commercial Furniture as a Commercial Installer and Driver earning approximately $22.00 per hour to $27.50 per hour depending on the nature of the assignment.  However, Commercial Furniture failed to compensate Moreno for

certain professional Commercial Installer services provided to Commercial Furniture. For example, Commercial Furniture refused and/or failed to pay Moreno for approximately 419 hours at the $22.00 per hour assignments and for approximately 839 hours at the $27.50 per hour assignments. And, Commercial Furniture failed to compensation Moreno for professional Commercial Installer services provided on behalf of Commercial Furniture for the project generating approximately $100,000.00 in revenue.

71.

Commercial Furniture repeatedly failed to pay Day or Moreno any, let alone minimum, wages for certain hours worked as a Commercial Installer in violation of the FLSA.

72.

Commercial Furniture's actions, policies, practices, and/or procedures violated the FLSA's minimum wage requirement because Defendants permitted Day and Moreno to work during certain periods without paying minimum wages.

73.

Under any interpretation of the terms and/or provisions, Commercial Furniture's conduct in violation of the FLSA was both willful and in bad faith.

74.

As a result of Commercial Furniture's intentional and willful unlawful acts when refusing to pay Day and Moreno any, let alone minimum wages, for certain hours worked as a Commercial Installer, Plaintiffs suffered damages in addition to incurring reasonable attorney's fees and litigation expenses.

75.

Pursuant to the FLSA, Day and Moreno therefor seek to recover unpaid minimum wages, liquidated damages in an amount equal thereto, as well as the reasonable attorney's fees and litigation expenses associated with the above-captioned case.

**COUNT III:**
**RACE AND NATIONAL ORIGIN DISCRIMINATION**
**IN VIOLATION OF SECTION 1981**
**(Bradley and Day Against All Defendants)**

76.

Section 1981 prohibits employers from discriminating against employees because of race and/or national origin.

77.

Defendants violated Section 1981, such that a cause of action exists where discrimination on the basis of race and/or national origin was the causative agent of adverse actions directed at Bradley and Day by Defendants.

78.

As African-American males, Bradley and Day members of a protected class under Section 1981.

79.

At all times relevant to this action, Bradley and Day qualified for their positions and diligently performed as Commercial Installer and Drivers while employed by Commercial Furniture.

80.

Furthermore, Bradley's and Day's skill, experience, and performance were at least on par with other non-African-American, similarly-situated Commercial Furniture employees.

81.

At all times relevant to this action, the relationships between Bradley, Day, and Commercial Furniture were relationships of "employee" to "employer," such that a cause of action exists where discrimination on the basis of race is alleged to be the cause of an adverse action directed to the employee by the employer.

82.

At all times relevant, Commercial Furniture acted by and through its agents and employees, including, but not limited to, Gookin and McMenimen, each of whom acted in the course and scope of their employment with and for Commercial Furniture.

83.

Despite Bradley's and Day's diligent work performance, Defendants intentionally discriminated against Bradley and Day on the basis of their race and/or national origin by, among other things, subjecting Bradley and Day to unfair treatment compared to similarly-situated non-African-American employees and paying Bradley and Day at a lower hourly rate than other, non-African-American Commercial Installers, including, but not limited to, Moreno, based on race and/or national origin.

84.

Consequently, Bradley and Day treated less-favorably than similarly-situated non-African-American Commercial Furniture employees in violation of Section 1981.

85.

Defendants' conduct adversely impacted the terms, conditions, and privileges of Bradley's and Day's employment.

86.

Defendants' actions constitute unlawful race and/or national origin discrimination in violation of Section 1981.

87.

Defendants have willfully and wantonly disregarded Bradley's and Day's statutory rights and Defendants' discrimination was undertaken in bad faith.

88.

As a direct and proximate result of Defendants' unlawful employment practices, which were intended to cause Bradley and Day harm and/or were committed with reckless disregard of the harm caused to Bradley and Day, in derogation of Bradley's and Day's Federally-protected rights, Bradley and Day have suffered and continues to suffer the indignity of race and national origin

discrimination, the invasion of his right to be free from race and national origin discrimination, humiliation, emotional pain, mental distress, inconveniences and mental anguish.

89.

Defendants' intentional and illegal conduct entitles Bradley and Day to compensatory damages, as well as any and all other remedies available under Section 1981.

90.

Defendants' actions with regard to Bradley and Day demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care entitling Bradley and Day to an award of punitive damages to deter, punish, and penalize Commercial Furniture for and from similar future conduct.

# COUNT IV
# RETALIATION
# IN VIOLATION OF THE FLSA
**(All Plaintiffs Against All Defendants)**

91.

The FLSA prohibits employers from retaliating against an employee who opposes an employment practice prohibited by, or exercises or attempts to exercise rights under, the FLSA.

92.

During the relevant period, the relationships between Plaintiffs and Commercial Furniture were employer-employee relationships within the meaning of the FLSA, such that a cause of action exists where retaliation on the basis of opposing and/or reporting unlawful employment practices is alleged to be the causative agent of adverse employment actions directed to Plaintiffs by Defendants.

93.

Defendants unlawfully and knowingly failed to pay the FLSA-mandated rates to Plaintiffs for hours certain worked as Commercial Installers and/or Driver during certain workweeks.

94.

Plaintiffs and other Commercial Installers repeatedly expressed concern and complained to Commercial Furniture employees, including, but not limited to, McMenimen and Gookin, about unlawful employment practices in violation of the FLSA.

95.

When Defendants failed to remedy the complaints about, *inter alia*, the failure to compensate pursuant to the FLSA, Plaintiffs communicated with other Commercial Installers, and sought legal representation, to remedy the FLSA violations.

96.

Following complaints concerning unlawful employment practices, as well as communications with other Commercial Installers concerning FLSA remedies, Defendants took adverse employment actions against Plaintiffs, including, but not limited to, ceasing professional communications, isolating Plaintiffs from colleagues and co-workers, reducing compensation/hours, denying access to employment records, and threatening to terminate employment.

97.

The effect of Defendants' actions has been to suspend and deprive Plaintiffs of an employment position, as well as loss income in the form of wages, prospective

retirement benefits, social security, and other benefits due Plaintiffs because of the exercise of Plaintiffs' Federally-protected rights

98.

Defendants' adverse employment actions against Plaintiffs constitute unlawful retaliation in violation of, *inter alia*, the FLSA.

99.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Plaintiffs harm and/or were committed with reckless and wanton disregard of the harm caused to Plaintiffs in derogation of Plaintiffs' Federally-protected rights.

100.

Defendants' discriminatory and retaliatory actions were undertaken in bad faith.

101.

The retaliation to which Plaintiffs were subjected by Defendants entitles Plaintiffs to all appropriate relief afforded under the law.

102.

As a result of Defendants' intentional and unlawful conduct, Plaintiffs have suffered lost compensation and other benefits of employment, physical and

emotional distress, inconvenience, humiliation, damage to reputation, other indignities, as well as past and future pecuniary losses.

103.

Defendants' actions with respect to Plaintiffs have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care and, thus, Plaintiffs are entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT V
## BREACH OF CONTRACT
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Day and Moreno Against Commercial Furniture)

104.

Under Georgia law, a contract is an agreement between two or more parties for the doing or not doing of some specified thing and an action at law lies for breach of a contract and that damages are given as compensation for the injuries sustained.

105.

In or around January 2020, Day and Commercial Furniture entered into an agreement, wherein Day agreed to provide professional Commercial Installer services to Commercial Furniture who agreed to pay Day for his services.

106.

Likewise, approximately two (2) years ago, Moreno and Commercial Furniture entered into an agreement, wherein Moreno agreed to provide professional Commercial Installer services to Commercial Furniture who agreement pay Moreno fifty percent (50%) of the $100,000.00 in revenue generate by the project.

107.

The agreements, which are supported by good and valuable consideration, constitute Commercial Furniture's unconditional promise to pay, at the agreed upon rates, Day and Moreno for professional Commercial Installer services provided to Commercial Furniture.

108.

Based upon Defendants' promises and the agreements, Day and Moreno provided diligent and competent professional Commercial Installer services to Commercial Furniture pursuant to the agreements while forgoing alternative employment opportunities.

109.

Day and Moreno professionally and diligently performed pursuant to the terms and conditions of the agreements.

110.

Notwithstanding Day's and Moreno's requests and demands for compensation pursuant to the agreements, Commercial Furniture breached the agreements when refusing and/or failing to compensate Day and Moreno for hours worked and at the agreed upon rates.

111.

As a direct and proximate result of Commercial Furniture's breach of the agreements, Day and Moreno have been damaged in the amount of the unpaid compensation, interest, and litigation expenses associated with the collection of the indisputable indebtedness.

112.

Because Commercial Furniture has acted in bad faith, been stubbornly litigious, and/or caused Day and Moreno unnecessary trouble and expense when breaching the agreements, Day and Moreno are also entitled to recover the expenses of litigation associated with Commercial Furniture's breach of contract.

## **PRAYERS FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully demand a trial by jury and request the following relief:

(a)     That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b)     That the Court grant declaratory judgment that Plaintiff's rights under, among other laws, the FLSA, Section 1981, and the laws of the State of Georgia were violated;

(c)     That the Court award Plaintiff compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d)     That the Court award back pay, including, but not limited to, unpaid back wages, lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e)     That the Court award liquidated damages equal to back pay and lost benefits based upon Defendants' willful violations of the FLSA;

(g)     That the Court award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such future conduct;

(h)     That the Court award pre-judgment interest on any monetary award;

(i)      That the Court grant a trial by jury as to all triable issues of fact; and

(j)      Further and additional relief as may be just and appropriate.

Respectfully submitted, this 5th day of June, 2022.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*
REGINA S. MOLDEN
Georgia Bar No. 515454
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com

*Counsel for Plaintiff Christian Bradley, Brandon Day, and Oscar Moreno*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CHRISTIAN BRADLEY, BRANDON DAY, and OSCAR MORENO, <br><br> Plaintiffs, <br><br> vs. <br><br> COMMERCIAL FURNITURE SERVICES, LLC, JIM MCMENIMEN, and CRAIG GOOKIN, <br><br> Defendants. | CIV. ACTION NO._____ <br><br> The Honorable _____ <br><br> **JURY TRIAL DEMANDED** |

## <u>LOCAL RULE AND SERVICE CERTIFICATION</u>

The undersigned counsel certifies that this document has been prepared in accordance with the Local Rules and that the foregoing Complaint for Damages has been filed with the Clerk using the CM/ECF system which will notify the attorney(s) of record.

Respectfully submitted, this 5th day of October, 2022.

MOLDEN & ASSOCIATES

_____
REGINA S. MOLDEN
Georgia Bar No. 515454